IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

KARY L. THOMPSON,                    )
                                     )
                                     )   CIVIL ACTION NO. 0:07-01424-RBH-BM
            Plaintiff,               )
                                     )
v.                                   )   **REPORT AND RECOMMENDATION**
                                     )
MICHAEL J. ASTRUE,                   )
COMMISSIONER OF SOCIAL               )
SECURITY,                            )
                                     )
            Defendant.               )
_____ )

        The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein he was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Rule

73.02(B)(2)(a), (D.S.C.).

        Plaintiff applied for Disability Insurance Benefits (DIB) alleging disability

commencing May 7, 2003 due to impairments related to degenerative disc disease and back pain.

(R.pp. 48-51, 111-112).  Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff

then requested a hearing before an Administrative Law Judge (ALJ), which was held on September

9,  2005. (R.pp. 332-366).  The ALJ thereafter denied Plaintiff's claim in a decision issued March

16, 2006. (R.pp. 18-27). The Appeals Council denied Plaintiff's request for a review of the decision,

thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 4-6).

        The Plaintiff then filed this action in United States District Court.  Plaintiff asserts that

there is not substantial evidence to support the ALJ's decision, and that the decision should be



reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was fifty (50) years old when he alleges his disability began, has a high school education with two (2) years of college and past work

2



experience as a carpenter. (R.pp. 27, 49, 99-106, 112-113, 115, 337). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that Plaintiff retained the residual functional capacity to perform a limited range of light work,[1] and was therefore not disabled. (R.pp. 24, 26-27).

Plaintiff asserts that in reaching this decision, the ALJ erred by improperly considering and evaluating the medical evidence, including specifically the opinions of Plaintiff's treating and examining physicians; by improperly considering and evaluating the credibility of Plaintiff's subjective testimony; and by failing to determine whether the testimony of the vocational expert regarding jobs Plaintiff could perform with his limitations could be resolved with the Dictionary of Occupational Titles (DOT). Plaintiff also complains that new evidence submitted to the Appeals Council was not properly considered. After careful review of the record and arguments presented, the undersigned is constrained to agree with the Plaintiff that the ALJ failed to properly evaluate and consider the medical opinions in the record, including that of Plaintiff's treating physicians, and that remand of the cause for further proceedings is therefore required.

The record reflects, and the Defendant does not dispute, that Plaintiff has a long

---

[1]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



history of back problems, including surgery to repair or remove a ruptured disc. Plaintiff's treating

orthopaedic surgeon was Dr. Calvert McCorkle, who has been treating the Plaintiff since 1997. In

addition to surgery, Plaintiff has been treated with medications, epidural blocks, and physical therapy

for his condition. Prior to May 2003, Plaintiff's condition had resulted in restrictions to light work,

but he was still able to work. See (R.pp. 134, 141, 178-179, 197-200, 236, 240-241). However, on

a visit to Dr. McCorkle on May 7, 2003 (Plaintiff's alleged disability onset date), Plaintiff stated that

he was not doing well and was having increased discomfort, noting that he had re-injured his back

a few weeks earlier. A physical examination revealed limitation in Plaintiff's range of rotation to 30°

forward bending, and 15° backward bending due to back and leg discomfort. Dr. McCorkle

scheduled updated x-rays and MRI scans, which were reviewed with the Plaintiff on May 20, 2003.

His x-ray and MRI scan reflected a narrowing and degenerative changes at 4 and 5, with a disc

protrusion at 4, 5 on the right. Dr. McCorkle did not recommend any further surgery, but opined that

Plaintiff had two degenerative discs that were probably the cause of his pain and that he would "keep

[Plaintiff] off of work" since he was apparently unable to do his job. (R.p. 172).

On June 17, 2003, Dr. McCorkle opined that Plaintiff had reached maximum medical

improvement and that he had a permanent partial impairment of 20 % to his lower back. (R.p. 171).

In a separate certificate of continued disability dated that same date, Dr. McCorkle stated that

Plaintiff's ability to return to work was "undetermined". (R.p. 235). Thereafter, on September 11,

2003, Dr. McCorkle opined that Plaintiff's back condition resulted in a total overall impairment

rating of 45% to the back, that Plaintiff could not "perform his regular job", and that he "would have

to rest for considerably more than one hour during the working portion of the work day." (R.p. 234).

See Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [noting importance to be accorded to



treating physician's opinion]; <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987) ["The opinion

of a claimant's treating physician [must] be given great weight and may be disregarded only if there

is persuasive contradictory evidence"].

In addition to this opinion from Dr. McCorkle, the record reflects that Plaintiff was

also seen for a consultative evaluation by Dr. Lary Korn at the request of the Commissioner on

September 15, 2003.  On examination Dr. Korn found that Plaintiff "put forth good effort in his range

of motion testing today and he has marked limitations at the lumbosacral spine."  Dr. Korn also

opined,

> I do not feel that [Plaintiff] can perform duties that are going to require prolonged
> repetitive bending, leaning, and stooping.  Lifting should be substantially limited to
> maybe 15 pounds or less.  In light of the medications he is requiring for chronic pain
> control, he should not work around dangerous moving machinery parts and should not
> operate such machinery.

(R.p. 190); <u>See</u> <u>Hunter v. Sullivan</u>, 993 F.2d 31, 35 (4th Cir. 1993) [significant weight given to

assessments of examining physicians].

Plaintiff was seen by Dr. George Bruce on September 16, 2003 for another

consultative medical examination.  Following an examination, Dr. Bruce also found that Plaintiff had

a "marked" inability to function in manual labor, and opined that Plaintiff's physical capacity

evaluation "would place him at sedentary work at best."  Dr. Bruce stated that Plaintiff's MRI

showed multiple levels of degenerative changes, and opined that "to a reasonable degree of medical

certainty, [Plaintiff] has greater than 50% physical impairment of his lumbosacral spine...giving him

totally and permanently disabled status." (R.p. 257).  <u>See</u> <u>Hunter</u>, 993 F.2d at 35;  <u>Richardson v.</u>

<u>Perales</u>, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute

substantial evidence].

5



Finally, the record reflects that beginning in August 2003 Plaintiff was treated for his complaints of back pain by Dr. Tracey Thomas, a family physician. See generally, (R.pp. 208-214). On May 18, 2004, Dr. Thomas filled out a questionnaire in which he opined that Plaintiff could not perform work at a level greater than sedentary work[2], and that he would "most probably" have to rest away from the work station for more than a hour a day.  Dr. Thomas also opined that Plaintiff would "most probably" miss more than three (3) days of work per month. (R.p. 263). Plaintiff thereafter continued to be seen by Dr. Thomas, who noted Plaintiff's back pain was "about the same as it always has been." (R.pp. 265-268).

In making his decision that Plaintiff was not entitled to DIB, the ALJ rejected the medical opinions of these treating and consulting physicians, and instead adopted limitations found by state agency physicians Dr. Sebiam Eli-Ibiamy and Dr. William Crosby, who reviewed Plaintiff's medical records on September 22, 2003 and  April 6, 2004, respectively, and completed physical residual functional capacity assessments concluding that Plaintiff could perform light work limited only by no more than occasionally climbing ramps/stairs and scaffolds, balancing, stooping, or crouching; and pushing and/or pulling with his left leg frequently.  (R.pp. 196-203, 224-231).[3] See (R.pp. 22, 24).  The only additions to the limitations found by the state agency consultants which were added by the ALJ were requirements that Plaintiff be able to sit or stand at his discretion, sit

---

[2]Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. § 404.1567(a) (2005).

[3]Dr. Eli-Ibiamy concluded in his assessment of September 22, 2003 that Plaintiff could "frequently" crouch, while Dr. Crosby concluded in his later assessment that Plaintiff could only "occasionally" perform this activity. (R.p.. 198, 226).



for up to one hour before having to change positions and stand or walk for up to thirty minutes before

having to change positions, and frequent but not continuous use of the left lower extremity for

operating foot controls.  (R.p. 24).

In rejecting the other medical evidence noted, the ALJ stated that Plaintiff had

received mainly conservative treatment with no recommendations for further surgery, that Plaintiff

was having no side effects from use of a duragesic patch, and that Plaintiff had maintained normal

muscle tone.  The ALJ gave minimal weight to Dr. McCorkle's September 11, 2003 opinion that

Plaintiff would have to rest more than one hour a day, finding that the issue before Dr. McCorkle at

that time was whether Plaintiff could return to his past relevant work, not other work, and that in any

event it appeared that this limitation had largely been based on Plaintiff's subjective allegations as

opposed to clinical findings. (R.p. 23).  He also did not accord any probative weight to the opinions

of Dr. Thomas or Dr. Bruce, finding that they were inconsistent with Plaintiff's activities of daily

living and the 5/5 strength shown in his lower extremities, and were not corroborated by objective

medical findings. (R.pp. 23-24).  The ALJ does not even discuss why he rejected the findings of Dr.

Korn, despite having stated earlier in his decision that Dr. Korn's opinions and findings were much

like those of Dr. Bruce. (R.p. 21).

Based on a review of the evidence in this case, the undersigned does not find that

substantial evidence supports the ALJ's conclusion that Plaintiff retains the RFC to do a restricted

range of light work.  One of Plaintiff's treating physicians, Dr. Thomas, opined that Plaintiff could

not perform work at a level greater than sedentary work, while both Dr. Thomas and Dr. McCorkle

(also a treating physician) opined that Plaintiff would need to rest away from the work station for



more than a hour a day.[4]  Dr. McCorkle reached his conclusions based not just on Plaintiff's

subjective complaints, as stated by the ALJ, but on x-rays and MRI scans which showed that Plaintiff

suffers from degenerative disc disease which has resulted in a total overall impairment rating of 45%

to his back.  Dr. Thomas' physical examinations also note Plaintiff's history of a herniated disc and

left radiculopathy as well as the numerous medications Plaintiff is on for purposes of pain

management, resulting in a diagnosis of chronic back pain with degenerative disc disease.

   Treating physicians' opinions as to the nature and severity of a claimed impairment

are entitled to controlling weight if they are well supported by medically acceptable clinical and

laboratory diagnostic techniques, and are not inconsistent with the other substantial evidence in the

record. Craig, 76 F.3d at 591-596; see also Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).  Here,

there is objective evidence to support the treating physicians' findings. Further, the treating

physicians' opinions are supported by the consultative physicians who examined the Plaintiff.  Dr.

Korn, who stated in his report that Plaintiff had put forth a "good effort" during his physical

examination, found that Plaintiff had "marked" limitations of the lumbosacral spine and that his

lifting should be substantially limited to "maybe 15 pounds or less", which is less than the level of

light work. (R.p. 190).  As noted, the ALJ did not even state in his decision why he had not accepted

Dr. Korn's findings.  Cf. Cotter v. Harris, 642 F.2d 700 (3rd Cir. 1981) [listing cases remanded

because of ALJ's failure to provide explanation or reason for rejecting or not addressing relevant

probative evidence]; Morales v. Apfel, 225 F.3d 310, 317-318 (3rd Cir. 2000) [ALJ must explicitly

---

  [4]This restriction was not included in the ALJ's findings nor in the hypothetical given to the vocational expert. See Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989) [in order for a vocational expert's opinion to be helpful and relevant, "it must be in response to proper hypothetical questions which thoroughly set out all of a claimant's impairments"].



weigh the evidence and explain his rejection of the medical opinions].  Similarly, Dr. Bruce opined

after conducting a physical examination that Plaintiff would be able to perform "sedentary work at

best." (R.p. 257).

Indeed, no physician who actually examined the Plaintiff, whether treating or

consultative, opined that Plaintiff could perform at a level greater than sedentary work, and even then

it would be with certain postural limitations.  The ALJ's rejection of these medical opinions in favor

of the opinions of two state agency medical consultants who had never even seen or examined the

Plaintiff without adequate explanation constitutes reversible error.  *Cf.* Bailey v. Barnhart, No. 01-

3474, 2002 WL 1401225, at **4 (7th Cir. July 26, 2002) [case remanded where ALJ did not

adequately explain her rationale for discounting the recommendations of plaintiff's treating

physicians]; Seitz v. Commissioner, 25 F.Appx. 229, 230-231 (6th Cir. 2001) [case remanded where

ALJ erred by discounting opinions of plaintiff's treating physicians]; Dewey v. Barnhart, No. 05-

3329, 2006 WL 1109767 (10th Cir. April 27, 2006) [case remanded where the record lacked medical

evidence to support the ALJ's RFC finding]; Coffman, 829 F.2d at 517 [Treating physician opinions

entitled to great weight absent persuasive contradictory evidence].

Whether Plaintiff could perform work with the more severe limitations found to exist

by his treating and examining physicians is unknown, as no finding with respect to Plaintiff being

able to engage in sedentary work activity was made, nor was any question posed to the vocational

expert which included a proper RFC as indicated by the medical evidence. Walker, 889 F.2d at 50-51

[in order for a vocational expert's opinion to be helpful and relevant, "it must be in response to

proper hypothetical questions which thoroughly set out all of a claimant's impairments"]. Therefore,

remand is required for the purpose of a proper consideration of the medical evidence and, if



necessary, the posing of a proper hypothetical to a VE which includes all of the impairments found

to exist. With respect to the remainder of Plaintiff's complaints and objections to the ALJ's decision,

on remand the ALJ will be able to reconsider and re-evaluate Plaintiff's credibility and the medical

record, including the additional materials provided to the Appeals Council, as part of the

reconsideration of this claim.  Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002)

[On remand, the ALJ's prior decision has no preclusive effect, as the new hearing is conducted de

novo].

### Conclusion

Based on the foregoing, and pursuant to the power of this Court to enter a judgment

affirming, modifying or reversing the decision of the Commissioner with remand in Social Security

actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the

Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for a proper

consideration of the medical evidence and, if necessary, a proper hypothetical to a vocational expert

which includes all of the limitations found to exist in the record, and for such further administrative

action as is deemed necessary and appropriate. See  Shalala v. Schaefer, 113 S.Ct. 2625 (1993); Butts

v. Barnhart, 388 F.3d 377 (2d Cir. 2004).

                                               _____

                                               Bristow Marchant
                                               United States Magistrate Judge

Columbia, South Carolina

February   28,  2008

